UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
----------------------------x
                            :
TYRONE P.                   :   Civ. No. 3:20CV00112(SALM)
                            :
v.                          :
                            :
ANDREW M. SAUL,             :
COMMISSIONER, SOCIAL        :
SECURITY ADMINISTRATION     :   January 28, 2021
                            :
----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Tyrone P. ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves to reverse the Commissioner's decision, or in the alternative, to remand for a re-hearing. [Doc. #15]. Defendant has filed a motion for an order affirming the decision of the Commissioner. [Doc. #17].

For the reasons set forth below, plaintiff's Motion for Order [**Doc. #15**] is **GRANTED**, to the extent it seeks remand, and defendant's Motion for an Order Affirming the Commissioner's Decision [**Doc. #17**] is **DENIED**.

1

I.  **PROCEDURAL HISTORY**[1]

Plaintiff filed concurrent applications for DIB and SSI on June 7, 2016, alleging disability beginning on August 9, 2015. See Certified Transcript of the Administrative Record, Doc. #11, compiled on March 1, 2020, (hereinafter "Tr.") at 564-76. Plaintiff's applications were denied initially on November 15, 2016,[2] see Tr. 379-80, and upon reconsideration on January 4, 2017, see Tr. 381-411.

On November 28, 2018,[3] plaintiff, represented by Attorney Veronica Halpine, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Edward Sweeney. See generally Tr. 309-41. Vocational Expert ("VE") Warren Maxim appeared and

---

[1] Simultaneously with his motion, plaintiff filed a Statement of Material Facts. [Doc. #15-2]. Defendant filed a Responsive Statement of Facts, indicating that he "generally agrees with Plaintiff's summary of the facts as presented in paragraphs 1 through 21, with the exception of any inferences, conclusions, or references to materials outside of the certified administrative record set forth by Plaintiff, and with any further clarifications" provided in Defendant's Responsive Statement of Facts. Doc. #17-2 at 1.

[2] While the Disability Determination Explanations for plaintiff's DIB and SSI claims are dated November 14, 2016, see Tr. 363, 378, the Disability Determination and Transmittals for the claims are dated November 15, 2016, see Tr. 379-80.

[3] A hearing was initially scheduled for May 23, 2018. See Tr. 342. However, plaintiff's counsel at the time, Kira Treyvus, see Tr. 441, failed to appear for the hearing, see Tr. 345. The ALJ rescheduled the hearing to preserve plaintiff's "right to be represented by an attorney or a non-attorney representative[.]" Tr. 345.

testified by telephone at the hearing. See Tr. 309-10, 336-40.
On January 10, 2019, the ALJ issued an unfavorable decision. See
Tr. 8-31. On December 11, 2019, the Appeals Council denied
plaintiff's request for review of the ALJ's decision, thereby
making the ALJ's January 10, 2019, decision the final decision
of the Commissioner. See Tr. 1-6. The case is now ripe for
review under 42 U.S.C. §405(g).

## II.   STANDARD OF REVIEW

The review of a Social Security disability determination
involves two levels of inquiry. First, the Court must decide
whether the Commissioner applied the correct legal principles in
making the determination. Second, the Court must decide whether
the determination is supported by substantial evidence. See
Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial
evidence is evidence that a reasonable mind would accept as
adequate to support a conclusion; it is more than a "mere
scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229
(1938)). The reviewing court's responsibility is to ensure that
a claim has been fairly evaluated by the ALJ. See Grey v.
Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to

3

apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human

Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).**

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Plaintiff filed his claims for benefits on June

5

7, 2016. <u>See</u> Tr. 564-76. Where a plaintiff's claim for benefits
was filed prior to March 27, 2017, "the Court reviews the ALJ's
decision under the earlier regulations[.]" <u>Rodriguez v. Colvin</u>,
No. 3:15CV01723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept.
4, 2018); <u>White v. Comm'r</u>, No. 17CV04524(JS), 2018 WL 4783974,
at *4 n.4 (E.D.N.Y. Sept. 30, 2018) ("'While the Act was amended
effective March 27, 2017, the Court reviews the ALJ's decision
under the earlier regulations because the Plaintiff's
application was filed before the new regulations went into
effect.'" (citation omitted)).

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is
under a disability is entitled to disability insurance benefits.
42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore
entitled to benefits, plaintiff must demonstrate that he is
unable to work after a date specified "by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments
must be "of such severity that he is not only unable to do his
previous work but cannot, considering his age, education, and
work experience, engage in any other kind of substantial gainful

work which exists in the national economy." 42 U.S.C.
§423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring
that the impairment "significantly limit[] ... physical or
mental ability to do basic work activities" to be considered
"severe").

There is a familiar five-step analysis used to determine if
a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the
Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed
impairment, the Commissioner engages in the fourth and fifth
steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases

7

previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be

broadly construed and liberally applied.'" Id. (quoting Haberman
v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   **THE DECISIONS OF THE ALJ AND THE APPEALS COUNCIL**

Following the above-described evaluation process, the ALJ
concluded that plaintiff "has not been under a disability, as
defined in the Social Security Act, from August 9, 2015, through
the date of [the ALJ's] decision." Tr. 25.

As an initial matter, the ALJ determined that plaintiff met
"the insured status requirements of the Social Security Act
through December 31, 2015." Tr. 13. At Step One, the ALJ found
that plaintiff "has not engaged in substantial gainful activity
since August 9, 2015, the alleged onset date[.]" Tr. 13.

At Step Two, the ALJ found that plaintiff "has the
following severe impairments: cerebral ataxia; a seizure
disorder; an organic mental disorder; and an alcohol abuse
disorder[.]" Tr. 13. The ALJ found that plaintiff's "status-post
bunionectomy and hammertoe repair of the left foot[,]
hypertension[,] and depression[,]" though medically determinable
impairments, were non-severe. Tr. 14.

At Step Three, the ALJ determined that plaintiff's
impairments, either alone or in combination, did not meet or
medically equal the severity of any of the listed impairments in
20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 14. The ALJ

specifically considered listings 11.02, 11.17, 11.18, and 12.02.

See Tr. 14-15. The ALJ next found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except that the claimant could lift and
> carry up to 20 pounds occasionally and 10 pounds
> frequently. The claimant could stand and walk two hours
> total. The claimant could occasionally climb ramps and
> stairs. The claimant could never climb ladders, ropes,
> or scaffolds. The claimant could occasionally balance.
> The claimant could frequently stoop, kneel, crouch, and
> crawl. The claimant is limited to frequent, but not
> constant, fingering with the bilateral upper
> extremities. The claimant must avoid concentrated
> exposure to environmental irritants, such as fumes,
> odors, dusts, and gases. The claimant needs to avoid
> unprotected hazards, such as machinery or heights. The
> claimant is able to understand, remember, and carry out
> simple tasks. The claimant required the use of a cane or
> assistive device when ambulating.

Tr. 17 (sic).

At Step Four, the ALJ concluded that plaintiff was unable

to perform his past relevant work as a material handler. See Tr.

23-24. At Step Five, after considering plaintiff's "age,

education, work experience, and" RFC, the ALJ found that "there

are jobs that exist in significant numbers in the national

economy that the claimant can perform[.]" Tr. 24. Specifically,

based on the VE's testimony, the ALJ found that plaintiff "would

be able to perform the requirements of representative

occupations at the sedentary exertional level," including "order

clerk[,]" "document preparer[,]" and "surveillance system

monitor[.]" Tr. 25.

Plaintiff submitted additional evidence to the Appeals
Council for review. See Tr. 2. The evidence included treatment
records dating from August 2013 to April 2019, and an opinion by
Dr. Lazar Greenfield. See Tr. 2. The Appeals Council divided the
additional evidence received into two categories: (1) evidence
that it found did "not show a reasonable probability that it
would change the outcome of the decision[,]" and (2) evidence
that it found did "not relate to the period at issue." Tr. 2.
The Appeals Council denied plaintiff's request for review. See
Tr. 1.

V.   **DISCUSSION**

Plaintiff timely filed this action for review and moves to
reverse the decision of the Commissioner or for a remand of this
case for further proceedings. See Doc. #15.

Plaintiff's brief is lengthy and somewhat rambling, at
times simply reciting significant portions of the record. It
offers little argument. However, the Court construes plaintiff's
motion as asserting the following errors:

(1)   The ALJ erred at Step Two in finding plaintiff's foot
      impairment and depression not to be severe
      impairments. See Doc. #15-1 at 10-13.

(2)   The ALJ erred at Step Two by not addressing
      plaintiff's degenerative disc disease and back pain.
      See Doc. #15-1 at 13-14.

11

(3)   The ALJ erred at Step Three by finding that plaintiff's cerebellar ataxia and organic mental disorder did not meet or medically equal a listing. See Doc. #15-1 at 1-9.

(4)   The ALJ erred in his weighing of the medical opinion evidence. See Doc. #15-1 at 14-18.

(5)   The RFC is not supported by substantial evidence because the ALJ "rejected every opinion in evidence[.]" Doc. #15-1 at 19.

(6)   The ALJ erred in failing to consider the State of Connecticut's disability determination. See Doc. #15-1 at 19.

(7)   The ALJ's Step Five findings were in error. See Doc. #15-1 at 21-24.

(8)   The Appeals Council failed to adequately review the additional evidence submitted, and violated the Treating Physician Rule. See Doc. #15-1 at 18-19; 20.

**A.   The ALJ's Step Two Findings**

At Step Two, the ALJ determines the severity of a plaintiff's impairments. See 20 C.F.R. §§404.1520(a)(4)(ii), 416.920(a)(4)(ii); see also 20 C.F.R. §§404.1520(c), 416.920(c). At this step, a plaintiff carries the burden of establishing that he is disabled and must provide the evidence necessary to make determinations as to his disability. See 20 C.F.R.

§§404.1512(a), 416.912(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. <u>See</u> Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). An impairment is "not severe" if it constitutes only a slight abnormality having a minimal effect on an individual's ability to perform basic work activities. <u>See</u> <u>id.</u>

If the ALJ finds <u>any</u> impairment to be severe, "the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." <u>Jones-Reid v. Astrue</u>, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), <u>aff'd</u>, 515 F. App'x 32 (2d Cir. 2013) (citation and quotation marks omitted). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." <u>Pompa v. Comm'r of Soc. Sec.</u>, 73 F. App'x 801, 803 (6th Cir. 2003) (citation omitted). Therefore, if the ALJ considers all impairments at subsequent stages of the analysis, failure to find a particular condition "severe" at Step Two, even if erroneous, constitutes harmless error. <u>See</u> <u>O'Connell v. Colvin</u>, 558 F. App'x 63, 65 (2d Cir. 2014) ("Because this condition was considered during the subsequent steps, any error [in finding it not to be severe at Step Two] was harmless."); <u>Reices-Colon v. Astrue</u>, 523 F. App'x 796, 798 (2d Cir. 2013) (same).

13

Non-severe impairments are considered if they are found to be "medically determinable ... impairments." 20 C.F.R. §§404.1521, 416.921. Such impairments

> must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

Id. A claimant will be found disabled only if the medically determinable impairment causing disability "has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). The SSA advises claimants: "We will consider only impairment(s) you say you have or about which we receive evidence." 20 C.F.R. §§404.1512(a)(1), 416.912(a)(1).

At Step Two, the ALJ found that plaintiff "has the following severe impairments: cerebral ataxia; a seizure disorder; an organic mental disorder; and an alcohol abuse disorder." Tr. 13. The ALJ found that plaintiff's "status-post bunionectomy and hammertoe repair of the left foot[,] hypertension[,] and depression[,]" though medically determinable impairments, were non-severe. Tr. 14. The ALJ made no mention at Step Two of back pain or degenerative disc disorder.

1.  *Left Foot Disorder and Depression*

Plaintiff contends that the ALJ erred by finding that his left foot condition and depression were not severe impairments. See Doc. #15-1 at 10-13.

Because the ALJ found that plaintiff had severe impairments at Step Two, he was required to consider plaintiff's severe and non-severe impairments in subsequent steps of the sequential evaluation. See Pompa, 73 F. App'x at 803. A review of the ALJ's decision reveals that he satisfied this requirement. Therefore, even if the ALJ erred in evaluating the severity of plaintiff's left foot impairment and depression at Step Two, any error would be harmless because he considered these impairments in subsequent stages of his analysis. See O'Connell, 558 F. App'x at 63.

Plaintiff obliquely suggests that the ALJ's failure to classify his left foot impairment as severe resulted in a failure to properly consider issues related to his balance and gait. See Doc. #15-1 at 10-11. The Court disagrees. The ALJ did consider plaintiff's balance and gait, and their relation to the foot condition, in his opinion. The ALJ considered plaintiff's testimony regarding the impact of his foot impairment on his ability to walk. See Tr. 18 ("During the hearing, the claimant testified that he is unable to work following an operation on three toes of his foot that made it difficult for him to

15

walk."). The ALJ also considered plaintiff's attendance at "physical therapy for gait training." Tr. 19. The ALJ considered plaintiff's complaints of "increased falls[]" and "trouble keeping his balance," Tr. 18, as well as his history of falling, noting that "he fell in September 2018 after consuming alcohol[.]" Tr. 18 (citing Tr. 1263, Ex. 19F: Sept. 13, 2018, treatment record reporting plaintiff "fell while going to the bathroom" after drinking "24 ounces of beer"). The ALJ further found that the record supported a finding that plaintiff required "a cane to ambulate[.]" Tr. 20.

The ALJ also adequately considered plaintiff's depression throughout the ruling. The ALJ discussed plaintiff's mental status examinations. See Tr. 16, 19-20. The ALJ considered plaintiff's mood and affect during meetings with his providers. See Tr. 16. Most importantly, the ALJ cited extensively to treatment notes from Community Health Services, which included patient health questionnaires in which plaintiff reported that he was not "feeling, down, depressed or hopeless[.]" See, e.g., Tr. 16 (citing Tr. 963, Feb. 13, 2018, patient health questionnaire, and Tr. 998, Jan. 22, 2016, patient health questionnaire).

Accordingly, plaintiff's argument that the ALJ erred at Step Two regarding plaintiff's left foot condition and depression is without merit.

16

2.  *Plaintiff's Alleged Back Condition*

Plaintiff further contends that the ALJ erred by not discussing, at Step Two, his complaints of back pain. Plaintiff asserts: "[P.] alleged disability due to, inter alia, degenerative disc disease. (R. at 773). He testified he had back pain. (R. at 318)." Doc. #15-1 at 13.

However, when he applied for benefits, plaintiff did not list degenerative disc disease or back pain as a condition that limits his ability to work. See Tr. 614, 624 (June 2016 application materials).[4] Likewise, when he updated his application in November 2016, he reported that the only changes to his condition were more frequent seizures and "[t]hyroid issues[.]" Tr. 632. In February 2017, plaintiff reported no new or worsening conditions. See Tr. 656. The only record cited in support of plaintiff's claim that he alleged back problems as a basis for disability is a letter from counsel, dated the day before the hearing, mentioning "degenerative disc disease[]" in a lengthy list of conditions. Tr. 773. And while plaintiff did testify that he had back pain, as the brief asserts, he did not describe a chronic condition, but rather indicated that his back

---

[4] Indeed, plaintiff's brief points to no actual diagnosis of degenerative disc disorder, and the Court has found none in the record.

had been bothering him "for a while because I've been doing a lot of lifting heavy material." Tr. 318.

Plaintiff did not adequately assert any back pain or condition as an impairment before the ALJ, and the ALJ's exclusion of back pain from the list of medically determinable impairments was not error. "[T]he Court cannot fault the ALJ for failing to address physical impairments that [plaintiff] never indicated [he] had[.]" Vega v. Astrue, No. 08CV01525(LAP)(GWG), 2009 WL 961930, at *5 (S.D.N.Y. Apr. 6, 2009), report and recommendation adopted in part, 2010 WL 2365851 (June 10, 2010).

Moreover, there is substantial evidence in the record to support a finding that back pain was not a medically determinable impairment that persisted "for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). For example, plaintiff cites a report of a chest x-ray that revealed "multilevel degenerative changes in the spine[,]" Tr. 1089, but makes no claim that follow-up back treatment was sought, or that symptoms resulted. Plaintiff also claims that he "reported back pain to his physicians[,]" Doc. #15-1 at 13, citing two records. One record does indicate that plaintiff was "positive" for back pain on May 5, 2016, Tr. 823-24, but the other indicates plaintiff was "negative" for back pain on December 4, 2013, Tr. 1237-38. The September 2018 record cited by plaintiff elsewhere in the brief, see Doc. #15-1 at 7, 11, 12, reports back pain,

but it appears to be secondary to a recent fall. See Tr. 1208. Further, at that visit, plaintiff appeared to feel the back pain was not serious, indicating that he wanted to focus on his stress levels and would "come back to talk about back pain." Tr. 1208. Other records cited by plaintiff in support of this argument post-date the November 28, 2018, hearing before the ALJ, but were submitted later, to the Appeals Council. See Tr. 56-7 and 62 (Dec. 17, 2018); Tr. 173 and 178 (Sept. 19, 2019).[5]

Accordingly, the ALJ made no error at Step Two regarding plaintiff's alleged back condition.

**B.    The ALJ's Step Three Findings**

At Step Three, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1[.]" Tr. 14.

Plaintiff asserts that the ALJ erred in his assessment of plaintiff's cerebellar ataxia and organic mental disorders at Step Three. See Doc. #15-1 at 1-9. In response, defendant asserts: "The medical criteria defining the listed impairments are intentionally set at a higher level of severity than the general statutory standard for disability because the listings were designed to operate as a presumption of disability that

---

[5] In September 2019, plaintiff described his back pain "as an ache." Tr. 173.

19

makes further inquiry unnecessary." Doc. #17-1 at 3-4 (citation
and quotation marks omitted). Defendant further notes that
plaintiff must establish, at Step Three, that all criteria for a
given listing are met. See id.

"The Social Security regulations list certain impairments,
any of which is sufficient, at step three, to create an
irrebuttable presumption of disability. The regulations also
provide for a finding of such a disability per se if an
individual has an impairment that is 'equal to' a listed
impairment." DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir.
1998) (citation omitted); see also 20 C.F.R. §§404.1520(d),
416.920(d). Plaintiff bears the burden of establishing that his
conditions meet a listing. See Conetta v. Berryhill, 365 F.
Supp. 3d 383, 396 (S.D.N.Y. 2019). "To show that he meets the
criteria, [plaintiff] must offer medical findings equal in
severity to all requirements, which findings must be supported
by medically acceptable clinical and laboratory diagnostic
techniques." Id. (citation and quotation marks omitted). "To
match an impairment in the Listings, the claimant's impairment
must meet all of the specified medical criteria of a listing."
Raymond v. Comm'r of Soc. Sec., 357 F. Supp. 3d 232, 237
(W.D.N.Y. 2019) (citation omitted).

1.   *Organic Mental Disorders*

The ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.02." Tr. 15.

> Listing 12.02 applies to "Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.02. To satisfy this listing, plaintiff's impairments must meet both the paragraph A and B criteria, or the paragraph C criteria of that listing. See id.

Cote v. Berryhill, No. 3:17CV01843(SALM), 2018 WL 4092068, at *9 (D. Conn. Aug. 28, 2018).

Plaintiff focuses his argument on the ALJ's evaluation of paragraph B criteria. To satisfy the criteria listed in paragraph B, plaintiff must have an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning[:]" (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence or maintenance of pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.02(B).

Plaintiff's brief repeats the ALJ's evaluation and provides a series of citations to evidence in the record, but fails to make any meaningful argument on this point. The Court construes

21

plaintiff's citations to the record as an attempt to suggest
that there is a lack of substantial evidence to support the
ALJ's findings. "Although plaintiff may disagree with the ALJ's
characterization of the evidence, 'genuine conflicts in the
medical evidence are for the Commissioner to resolve.'" <u>Dudley
v. Berryhill</u>, No. 3:16CV00513(SALM), 2018 WL 1255004, at *8 (D.
Conn. Mar. 12, 2018) (quoting <u>Veino v. Barnhart</u>, 312 F.3d 578,
588 (2d Cir. 2002)). The ALJ provided an extensive discussion of
the evidence he considered in making his Step Three findings
that plaintiff had only "mild" or "moderate" limitations in each
of the paragraph B areas of functioning. <u>See</u> Tr. 15-16. The
Court finds that the ALJ's conclusions at Step Three regarding
organic mental disorders are supported by substantial evidence.
<u>See</u> Tr. 15-17.

> 2. *Cerebellar Ataxia*

The ALJ found: "Regarding the claimant's cerebellar ataxia,
the undersigned has determined that the claimant's impairments
do not, singly or in combination, meet the requirements of any
listing under 11.00, such as listings 11.17 or 11.18." Tr. 15.
Plaintiff argues that the ALJ erred:

> The ALJ addressed this impairment in one paragraph that
> consists almost entirely of a recitation of the
> requirements under the general listing for neurological
> impairments 11.00. There is no analysis of the medical
> evidence and not a single citation to the record. <u>Id.</u>
> The finding is not supported by a medical opinion. This

> omission is particularly disadvantageous when evaluating
> of whether [plaintiff] equals a listing.

Doc. #15-1 at 1-2 (sic). In response, the Commissioner asserts:

> [T]he ALJ's finding that [plaintiff's] cerebellar ataxia
> did not satisfy the criteria of a listed impairment under
> 11.00 is not flawed simply because the ALJ did not
> discuss the medical evidence that supported that finding
> contemporaneously with his step three analysis, but
> instead primarily discussed that evidence in a later
> section of the decision.

Doc. #17-1 at 6.

Plaintiff appears to argue that the ALJ's explanation of

his Step Three findings was insufficient. While

> an ALJ "should set forth a sufficient rationale in
> support of his decision to find or not to find a listed
> impairment," the absence of an express rationale for an
> ALJ's conclusions does not prevent us from upholding
> them so long as we are "able to look to other portions
> of the ALJ's decision and to clearly credible evidence
> in finding that his determination was supported by
> substantial evidence." Berry [v. Schweiker], 675 F.2d
> [464,] 469 (2d. Cir. 1982).

Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir.

2010); see also Correa v. Comm'r Soc. Sec. Admin., No.

3:16CV01234(VLB), 2017 WL 4457442, at *4 (D. Conn. Oct. 6, 2017)

("However, this does not mean the ALJ must go through an in-

depth analysis of the listing requirements because the absence

of an express rationale does not prevent [the court] from

upholding the ALJ's determination of listed impairments so long

as the ALJ's decision and the evidence before him indicate that

his conclusion was supported by substantial evidence." (citing

Berry, 675 F.2d at 468 (quotation marks omitted))).! Here, while
the ALJ dedicated only one paragraph to plaintiff's cerebellar
ataxia in his Step Three evaluation, see Tr. 15, he discussed
and evaluated plaintiff's cerebellar ataxia at length in
subsequent steps of the sequential evaluation. See Tr. 17-24.
For example, in his RFC analysis, the ALJ considered and
discussed objective medical findings in the record that
"revealed evidence of regional atrophy of the cerebellar[.]" Tr.
18. The ALJ also considered treatment notes from plaintiff's
providers, observing:

> [T]he claimant's providers often noted that his
> cerebellar ataxia was mild in nature, further noting
> that he ambulated well with his cane and that the
> claimant largely denied experiencing any falls during
> the period alleged (Exhibit 16F at 5). At times,
> treatment records even showed that he could walk with
> only minimal assistance from his cane or noted no use of
> a cane at all, instead showing that he retained a steady
> gait (Exhibit 14F at 71; 16F at 12).

Tr. 19. By looking to other portions of the ALJ's decision, the
Court is able to conclude that the ALJ fully considered
plaintiff's cerebellar ataxia when determining that plaintiff's
impairments did not equal Listing 11.00. The ALJ's determination
that plaintiff's cerebellar ataxia did not meet the requirements
of Listing 11.00 is supported by substantial evidence and the
ALJ did not err on this basis.

However, as set forth below, the Court finds that the
Appeals Council erred in failing to consider an opinion of

plaintiff's treating neurologist, Dr. Greenfield. Consideration of this opinion, on remand, may affect the Step Three analysis as to plaintiff's cerebellar ataxia. As a result, the Court will require the Commissioner to reevaluate plaintiff's cerebellar ataxia on remand.

### C.   The ALJ's Determination of the RFC

Plaintiff contends that the ALJ "erred in his credibility assessments[,]" an argument that appears to be directed at the weight assigned to the various medical opinions of record, rather than at the credibility of plaintiff himself. Doc. #15-1 at 14. He further argues that, due to this purported error, the "RFC is not supported by substantial evidence." Doc. #15-1 at 19.

The section of plaintiff's brief dedicated to the evaluation of the medical opinions reviews each of the opinions of record, and sets forth some of the ALJ's discussion of those opinions. It contains virtually no argument. Plaintiff asserts that the ALJ "arbitrarily substitute[d] his own judgment for competent medical opinion." Doc. #15-1 at 14. Plaintiff does not explain how he believes the ALJ did that. Following that conclusory assertion, plaintiff goes on to summarize the opinions of record. See id. at 14-18. Plaintiff concludes: "The ALJ had an obligation to recontact these physicians if he had

questions about their reports." Id. at 18. There is no indication that the ALJ had any such questions.

Plaintiff's brief presents no meaningful argument for the Court's consideration on the weighing of the opinion evidence. The Court concurs with the analysis of the Commissioner, as set forth in his brief, that the record adequately supports the ALJ's findings. See Doc. #17-1 at 14-20.

Likewise, under the bold-type heading asserting that the RFC is not supported by substantial evidence, plaintiff provides no meaningful argument. This section is comprised of only one paragraph, alleging that the ALJ "rejected every opinion in evidence if favor of propounding his one RFC." Doc. #15-1 at 19 (sic). This is a misreading of the ALJ's ruling, which in fact accorded "significant weight" to the opinion of consultative examiner Dr. Pleshkovich, Tr. 20; "[p]artial weight" to the opinions of consultative examiner Dr. Dodenhoff, Tr. 20; "[p]artial weight" to the opinions of treating Physicians' Assistant Baginski, Tr. 21; and "[p]artial weight" to the opinions of Dr. Montezuma, Tr. 22.

Plaintiff cites no law in this section of the brief. The Court acknowledges that some courts have held that "if an [ALJ] gives only little weight to all the medical opinions of record, the [ALJ] creates an evidentiary gap that warrants remand." Waldock v. Saul, No. 18CV06597(MJP), 2020 WL 1080412, at *3

(W.D.N.Y. Mar. 6, 2020) (citations omitted) (emphases added).[6] But here, as detailed above, the ALJ assigned <u>significant</u> weight to the opinion of one doctor, and <u>partial</u> weight to all of the other opinions of record. <u>See</u> Tr. 20-22. "The fact that the ALJ gave no more than partial weight to the two opinions of record concerning Plaintiff's physical condition does not create" any "evidentiary gap[,]" <u>Dinapoli v. Berryhill</u>, No. 6:17CV06760(MAT), 2019 WL 275685, at *3 (W.D.N.Y. Jan. 22, 2019), and certainly does not mean that the ALJ created his own RFC from whole cloth.

        "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." <u>Matta v. Astrue</u>, 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ adequately considered and properly weighed the medical opinions, and determined the RFC based on those opinions.

        However, as set forth below, in light of the Court's determination that remand is required to address the Appeals

---

[6] The undersigned does not adopt this view, but because this case does not present the question, the Court need not determine whether multiple opinions assigned "little weight" may, <u>collectively</u>, provide sufficient evidence on which an ALJ may base the RFC.

Council's failure to consider a treating physician opinion, the
Court will require the Commissioner to reconsider the RFC on
remand, taking into account any new evidence received.

**D.   The ALJ's Consideration of the State of Connecticut's
Disability Determination**

Plaintiff asserts that "[t]he ALJ was required to consider
the disability determination of the state of Connecticut medical
review team[, but] [t]he state disability determination is not
mentioned in the decision." Doc. #15-1 at 19. In response, the
Commissioner asserts that "[e]valuations by another agency for
purposes of state benefits employ a different standard for
determining disability than required under the Social Security
Act, and therefore are not binding on the Commissioner." Doc.
#17-1 at 19 (citing 20 C.F.R. §§404.1504, 416.904). The
Commissioner also states that while "[p]laintiff cites no case
law to support his position, the Commissioner acknowledges that
this Court has found that the fact that an ALJ did not
explicitly discuss a DSS determination may require remand in
some circumstances, such as where the ALJ also failed to
consider the evidence on which the determination is based." Doc.
#17-1 at 19 (citing Perez v. Berryhill, No. 3:15CV01841(SALM),
2018 WL 948285, at *6 (D. Conn. Feb. 20, 2018)).

However, defendant goes on to distinguish Perez from the
instant case:

> Unlike _Perez_, however, the ALJ in this case considered the documents attached to the DDS determination upon which it was based — _i.e._, Mr. Baginski's May 20, 2016 opinion and Plaintiff's Client Supplement for Medical Information — and thus Defendant submits that remand to consider the DSS determination that he was "disabled" for purposes of state benefits would serve no useful purpose.

Doc. #17-1 at 20 (footnote omitted).

Disability determinations by other entities are not binding on the Commissioner. See 20 C.F.R. §§404.1504, 416.904.

> The Social Security Administration is required to evaluate all the evidence in the case record that may have a bearing on its determination or decision of disability, including decisions by other governmental and nongovernmental agencies. Accordingly, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered. The Second Circuit has similarly concluded that a determination made by another governmental agency that a social security claimant is disabled is entitled to some weight and should be considered.

_Perez_, 2018 WL 948285, at *5 (citations and quotation marks omitted).

> These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules. We will evaluate the opinion evidence from medical sources, as well as "non-medical sources" who have had contact with the individual in their professional capacity, used by other agencies, that are in our case record, in accordance with [our practices].

SSR 06-03p, 2006 WL 2263437 (S.S.A. Aug. 9, 2006).

The Court agrees with the Commissioner that remand is not required on this basis. The State disability finding states that

it is based on the following documentation: (1) a supplemental
statement by claimant dated May 6, 2016; (2) a medical report by
Andrew Baginski, PA-C, dated May 20, 2016; (3) a medical report
by APRN E. Cournean, dated May 9, 2016; and (4) "office notes
from 5/15-5/9/16[.]"[7] Tr. 604. Most of these documents appear in
the record that was before the ALJ, and the ALJ expressly
considered them:

> (1) Supplemental statement by claimant -- Exhibit 3F. <u>See</u>
> Tr. 833-42. The ALJ considered this statement, expressly
> citing to Exhibit 3F multiple times. <u>See</u> Tr. 16, 19, 20,
> 21, 22, 23.
>
> (2) 2016 Baginski opinion -- Exhibit 5F. <u>See</u> Tr. 879-88.
> The ALJ considered the 2016 Baginski opinion, as well as a
> later opinion by Baginski dated August 2018, at some
> length. <u>See</u> Tr. 21-22. He assigned these opinions "partial
> weight." Tr. 21.
>
> (3) This report does not appear in the record. <u>See</u> Doc.
> #15-2 at 10 n.2. Plaintiff does not contend that the
> absence of this record constitutes error.
>
> (4) Treatment records -- Exhibits 1F, 2F, 4F, 5F, 6F, 7F,
> 14F. There are numerous treatment records and notes from
> 2015 and 2016, predating the June 2016 finding of

---

[7] It is not clear whether this means May 9-15, 2016, or May 2015
through May 9, 2016.

disability by the State, in the record. The ALJ considered these records throughout his ruling.

As is clear, while the ALJ did not explicitly discuss the State of Connecticut's disability determination itself, he did consider and weigh the opinion evidence and records that underlie that determination. In Perez, the Court ordered remand because the ALJ's decision failed to address either the State's disability determination or the treating physicians' opinions on which the state agency relied in making its decision. See Perez, 2018 WL 948285, at *5. Here, in contrast, the ALJ considered all of the relevant evidence supporting the State's determination, and, in particular, gave attention to the opinion of the non-physician provider, affording that opinion partial weight. See Tr. 21-22.

The purpose of requiring an ALJ to consider state disability determinations is to give the ALJ "insight into [plaintiff's] mental and physical impairment(s)[.]" SSR 06-03p, 2006 WL 2263437. That purpose was achieved here. As directed, the ALJ evaluated "the opinion evidence from medical sources, as well as "non-medical sources" who have had contact with the individual in their professional capacity, used by other agencies," that were in the record. SSR 06-03p, 2006 WL 2263437. Accordingly, even if the ALJ should have expressly addressed the State disability determination in his ruling, any error in

31

failing to do so is harmless because he thoroughly considered, and weighed, the evidence on which the state disability agency relied in making its determination.

### E.    The Appeals Council's Decision

Finally,[8] plaintiff asserts that the Appeals Council erred in its denial of review, in two ways. See Doc. #15-1 at 18-19, 20. First, plaintiff asserts that the Appeals Council improperly evaluated the additional evidence submitted by plaintiff. See Doc. #15-1 at 20. Second, plaintiff asserts that the Appeals Council failed to follow the treating physician rule in evaluating the opinion of Dr. Lazar Greenfield (the "Greenfield opinion"). See Doc. #15-1 at 18-19.

---

[8] In light of the finding that remand is required, the Court does not reach plaintiff's claim that the ALJ's Step Five findings were erroneous. The Court notes, however, that each of the jobs identified by the VE at Step Five had an SVP of 2, which constitutes unskilled work. See DOT, Appendix C, "Specific Vocational Preparation (SVP)," available at https://www.occupationalinfo.org/appendxc_1.html#II (last accessed December 30, 2020); 20 C.F.R. §§404.1568(a), 416.968(a). It was unnecessary for the ALJ to expressly mention plaintiff's educational level in the hypotheticals posed to the VE because plaintiff testified that he left school after completing eighth or ninth grade, see Tr. 314, and the VE indicated that he had heard plaintiff's testimony, see Tr. 337. Furthermore, any error in finding that plaintiff had "limited education[,]" Tr. 24, rather than "marginal education[,]" Doc. #15-1 at 22, would be harmless, because individuals with limited education or marginal education can perform unskilled work. See 20 C.F.R. §§404.1564(b)(2)-(3), 416.964(b)(2)-(3).

Plaintiff incorrectly asserts that all additional evidence submitted to the Appeals Council was "rejected as not relating to the relevant period[.]" Doc. #15-1 at 20. Contrary to plaintiff's contention, the Appeals Council divided the additional evidence submitted into two categories: (1) evidence that it found did not show a reasonable probability that it would change the outcome of the decision and (2) evidence that it found did not relate to the period at issue. See Tr. 2. Some of the treatment notes submitted by Dr. Greenfield, which pertained to the relevant period, were considered by the Appeals Council. See Tr. 2. This includes a treatment record from December 17, 2018, in which Dr. Greenfield appeared to be optimistic about plaintiff's progress. See Tr. 55-64.

However, the Appeals Council determined that the Greenfield opinion, dated October 11, 2019, did not relate to the period at issue. See Tr. 2. The relevant period in this case is from August 9, 2015, plaintiff's alleged onset date, see Tr. 564, 568, to January 10, 2019, the date of the ALJ's decision, see Tr. 2, 8. The Greenfield opinion is dated October 11, 2019, nine months after the ALJ issued his decision. See Tr. 41. Thus, to relate to the relevant period, the Greenfield opinion must be retrospective.

Plaintiff makes no argument that Dr. Greenfield's opinion is retrospective. Rather, plaintiff twice inaccurately asserts

33

that the report "predates the hearing." Doc. #15-1 at 20; see
also id. at 14 (asserting that the report was completed "before
the hearing[]"). The Commissioner argues that the Greenfield
opinion "bore no indicia of retroactivity to the period at
issue[.]" Doc. #17-1 at 23. This, too, is inaccurate. The Court
therefore is left to evaluate the opinion for itself.

     The Greenfield opinion expressly states that Dr. Greenfield
had been treating plaintiff "since 5/17/17". Tr. 36. Dr.
Greenfield's treatment records, including the December 17, 2018,
progress note authored by Dr. Greenfield and submitted to the
Appeals Council (Tr. 55-64), confirm that fact. Indeed, the
December 17, 2018, progress note reviews in detail plaintiff's
prior visits to Dr. Greenfield on May 17, 2017; December 6,
2017; and June 6, 2018. See Tr. 55-56. There is no evidence in
the record suggesting that plaintiff saw Dr. Greenfield at all
after December 2018. It is therefore apparent that Dr.
Greenfield treated plaintiff during the relevant period, and
that his October 2019 opinion was based on and reflective of
plaintiff's condition during that period. Accordingly, it was
error for the Appeals Council to find that it did not relate to
the period at issue. See Tr. 2.

     This error by the Appeals Council is meaningful only if the
evidence it disregarded as not relating to the relevant period
was (1) subject to the treating physician rule or (2) otherwise

34

sufficient to change the outcome of the decision. The Court
finds that the Greenfield opinion is subject to the treating
physician rule, triggering a requirement that the Appeals
Council properly weigh that opinion and explain the weight
assigned to it. The Appeals Council did not consider the
Greenfield opinion, effectively assigning it "no weight," and
gave no explanation for this decision, other than that the
opinion was issued after the ALJ's decision. See Tr. 2. This
error requires remand.

The treating physician rule is no longer in effect for
newly-filed disability applications, but it did apply to
plaintiff's application. Under this rule, "the opinion of a
claimant's treating physician as to the nature and severity of
the impairment is given controlling weight so long as it is
well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other
substantial evidence in the case record." Burgess v. Astrue, 537
F.3d 117, 128 (2d Cir. 2008) (citation and quotation marks
omitted). "The rule applies equally to retrospective opinions
given by treating physicians." Campbell v. Astrue, 596 F. Supp.
2d 446, 452 (D. Conn. 2009). If an ALJ does not assign
controlling weight to a treating physician's opinion, the ALJ
has a "duty to explain to a plaintiff the 'good reasons' why the
ALJ is discounting a treating physician's opinion." Leroy v.

Colvin, 84 F. Supp. 3d 124, 134 (D. Conn. 2015).

"Importantly, the treating physician rule applies to the Appeals Council when the new evidence at issue reflects the findings and opinions of a treating physician." Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) (citing Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)); see also Oshea v. Saul, No. 3:19CV00232(SALM), 2020 WL 2374935, at *6 (D. Conn. Mar. 30, 2020) (finding remand necessary where the Appeals Council "provided no explanation for its conclusion" that a treating physician opinion would not alter the outcome); McIntire v. Astrue, 809 F. Supp. 2d 13, 21 (D. Conn. 2010) ("[T]the additional evidence received by the Appeals Council required further explanation and an application of the treating physician rule on appeal."). "Accordingly, the Appeals Council must give good reasons for the weight it assigns to a plaintiff's treating physician's opinion." Shrack, 608 F. Supp. 2d at 302; see also Allborty v. Comm'r of Soc. Sec., No. 6:14CV01428(DNH)(ATB), 2016 WL 770261 at *8 (N.D.N.Y. Jan. 28, 2016), report and recommendation adopted sub nom. Allborty v. Colvin, 2016 WL 796071 (Feb. 22, 2016). "Further, it is insufficient for the Appeals Council to merely acknowledge that they reviewed new evidence from a treating physician without providing such reasoning." Allborty, 2016 WL 770261 at *8 (citation and quotation marks omitted).

A treating physician is one who has provided a plaintiff "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with" that plaintiff. 20 C.F.R. §404.1527(a)(2). The record indicates that Dr. Greenfield was plaintiff's treating neurologist, and had seen him for regular appointments, every six months, on four occasions in 2017 and 2018. See Tr. 1132-37 (May 7, 2017, treatment note); 1124-29 (December 6, 2017, treatment note); 1252-62 (June 6, 2018, treatment note); 55-64 (December 17, 2018, treatment note). Plaintiff also saw Dr. Greenfield on June 5, 2017, for an electroencephalogram. See Tr. 1130-31. While five visits is relatively few, the Court finds that it is sufficient to establish a treating physician relationship under the circumstances of this case. Specifically, Dr. Greenfield is a specialist, and recommended that plaintiff see him only every six months. See, e.g., Tr. 1136 (May 7, 2017, treatment note: "A return visit will be scheduled in about 6 months."). The relationship can fairly be described as "ongoing." See, e.g., Dudley v. Berryhill, No. 3:16CV00513(SALM), 2018 WL 1255004, at *10 (D. Conn. Mar. 12, 2018). Further, at each appointment, Dr. Greenfield reviewed plaintiff's prior medical history and obtained information for the six month period prior to the appointment. See, e.g., Tr. 55-64 (December 17, 2018, progress note).

The relevant regulations address just such a situation:

> Generally, we will consider that you have an ongoing
> treatment relationship with an acceptable medical source
> when the medical evidence establishes that you see, or
> have seen, the source with a frequency consistent with
> accepted medical practice for the type of treatment
> and/or evaluation required for your medical
> condition(s). We may consider an acceptable medical
> source who has treated or evaluated you only a few times
> or only after long intervals (e.g., twice a year) to be
> your treating source if the nature and frequency of the
> treatment or evaluation is typical for your
> condition(s).

20 C.F.R. §§404.1527(a)(2), 416.927(a)(2) (emphasis added).

The Commissioner rests on his argument that the Greenfield opinion is not retrospective, and thus provides no argument regarding application of the treating physician rule to the opinion. The only case cited by the Commissioner in support of his argument that failure to consider the Greenfield opinion was not error is inapposite. The Commissioner cites only the Second Circuit Summary Order, which concludes:

> Guerra submitted to the Appeals Council an assessment
> done by an occupational therapist and other physician
> treatment notes from after the relevant time period.
> None of the new material purported to be retroactive. We
> agree with the Commission that it did not relate to the
> relevant period, so it was not material to the ALJ
> decision.

Guerra v. Saul, 778 F. App'x 75, 77–78 (2d Cir. 2019). Notably, the only assessment (opinion) submitted to the Appeals Council in Guerra was that of an occupational therapist, as to whom the treating physician rule would not apply. Further, the District

Court's opinion indicates that the record did not establish that the occupational therapist "had a longitudinal relationship with Plaintiff such that he could offer an opinion on her functioning during the relevant time period, nor does his assessment purport to be retroactive." Guerra v. Comm'r of Soc. Sec., No. 1:16CV00991(MAT), 2018 WL 3751292, at *8 (W.D.N.Y. Aug. 7, 2018), aff'd sub nom. Guerra v. Saul, 778 F. App'x 75 (2d Cir. 2019). In contrast, here, Dr. Greenfield is a physician, and the record does demonstrate a longitudinal treatment relationship with plaintiff.

The Commissioner argues: "The Appeals Council is not required to provide an elaborate explanation when it evaluates additional evidence[.]" Doc. #17-1 at 22. Ordinarily, that is true. But it is not true when the "additional evidence" at issue is the opinion of a treating physician. "The law is clear that the Commissioner must, acting either through the Appeals Council or the ALJ, properly evaluate a treating physician's opinion and provide good reasons for that evaluation." Oshea, 2020 WL 2374935, at *6.

Dr. Greenfield is a treating physician. His opinion can reasonably be considered as relating to the time period at issue. His opinion finds plaintiff dramatically more impaired than does the RFC determined by the ALJ. "Yet the Appeals Council provided no explanation for its conclusion that the new

evidence, including this opinion, would not alter the outcome."
Oshea, 2020 WL 2374935, at *6.

Here, the Appeals Council received evidence that was "new
and material" in the form of a treating physician opinion and
failed "to give good reasons for the weight it assigned to" that
opinion. McIntire, 809 F. Supp. 2d at 23. The Appeals Council's
conclusory (and erroneous) assertion that the Greenfield opinion
did "not relate to the period at issue[,]" Tr. 2, does

> not satisfy the regulations' requirement that the
> Commissioner give good reasons for the weight given the
> treating physician's opinion; obviously, the ALJ could
> not explain the rejection of the treating physician's
> opinion first submitted during appeal, and the Appeals
> Council failed to offer any explanation for its
> rejection of that opinion.

McIntire, 809 F. Supp. 2d at 20-21. The Court finds, as it did
in McIntire, that remand is necessary. See, e.g., Velez v.
Berryhill, No. 3:18CV01024(SALM), 2019 WL 2052013, at *7 (D.
Conn. May 9, 2019) ("[T]he Appeals Council's cursory, formulaic
rejection of the evidence without any legal or factual
reasoning, is insufficient. Therefore, remand for
reconsideration of plaintiff's ... application is appropriate."
(citations and quotations marks omitted)); see also Wright v.
Astrue, No. 11CV06226(MAT), 2012 WL 2339269, at *6 (W.D.N.Y.
June 19, 2012) ("The Appeals Council was ... obligated to give
specific reasons why a statement by K.M.'s treating physician
was rejected[.] Accordingly, this Court finds that the Appeals

Council committed legal error by summarily rejecting the evidence.").

**VI.   CONCLUSION**

For the reasons set forth herein, plaintiff's Motion for Order [**Doc. #15**] is **GRANTED,** to the extent plaintiff seeks a remand, and defendant's Motion for an Order Affirming the Commissioner's Decision [**Doc. #17**] is **DENIED**.

This matter is hereby remanded for further administrative proceedings consistent with this ruling. The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand.

SO ORDERED at New Haven, Connecticut, this 28th day of January, 2021.

_____/s/_____

HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
